**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LINDA ANDRADE, individually, and on behalf of all others similarly situated; and LILIANA AVILA, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>P.F. CHANG'S CHINA BISTRO, INC.,<br><br>Defendant. | CASE No. 12CV2724 JLS JMA<br><br>**ORDER: (1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION; AND (2) STAYING JUDICIAL PROCEEDINGS**<br><br>(ECF No. 11) |

Presently before the Court is Defendant P.F. Chang's China Bistro Inc.'s ("Defendant") motion to compel arbitration and to dismiss or stay proceedings. (ECF No. 11.) Also before the Court are Plaintiffs Linda Andrade and Liliana Avila's ("Plaintiffs") amended opposition to Defendant's motion, (ECF No. 18), and Defendant's reply in support, (ECF No. 19). Having reviewed the applicable facts and the law, the Court **GRANTS** Defendant's motion to compel arbitration and **STAYS** these judicial proceedings pending the outcome of arbitration.

*///*

*///*

- 1 -  12CV2724

**BACKGROUND**

Plaintiffs filed their operative First Amended Complaint ("FAC") on December 12, 2012. (ECF No. 8.) Plaintiffs allege in their FAC that Defendant, acting as Plaintiffs' employer, failed to provide complete, detailed wage statements to Plaintiffs and others similarly situated as required by California Labor Code sections 226(a) and 1174, the I.W.C. Wage Order 5-2001(7), and the California Business & Professions Code sections 17200-17208. (ECF No. 8 at ¶¶ 4-6, 16, 24-28.) Plaintiffs bring these claims as a class action. (*Id.* at ¶¶ 13-29.) Plaintiffs additionally bring claims against Defendant for violations of California Labor Code sections 226(a) and 1174, and the I.W.C. Wage Order 5-2001(7) as a Private Attorney General Act ("PAGA") representative cause of action. (*Id.* at ¶¶ 34-36.) Plaintiffs allege that Defendant omitted applicable hourly wage rates from pay statements. (*Id.* at ¶ 4.) Plaintiffs assert that these practices prevented themselves and others similarly situated from verifying the accuracy of their pay statements. (*Id.*) Plaintiffs request that the Court certify a class, enjoin Defendant from withholding complete wage statements, as well as award statutory damages and attorney's fees. (*Id.* at 9-10.)

On December 20, 2012, Defendant moved the Court to compel arbitration. (ECF No. 11.) Defendant contends that Plaintiffs signed an arbitration agreement, referred to as the Defendant's Dispute Resolution Policy ("DRP"), before beginning employment with Defendant. (ECF No. 11-1 at 8.) The DRP allegedly requires Plaintiffs to submit their claims individually to arbitration and forbids Plaintiffs from proceeding with their claims as a class or as a PAGA representative action. (ECF. No. 11-1 at 6.) Defendant further alleges that the DRP was provided to Plaintiffs in English, and that if requested, the DRP would have been provided to the Plaintiffs in Spanish. (ECF No. 11 at 3; Fern. Decl ¶ 3, ECF No. 11-3; Fern. Decl. Ex. B, ECF No. 19-2.) The DRP at issue contains a cover page, which states in pertinent part:
///

> We have enclosed P.F. Chang's China Bistro Inc.'s Dispute Resolution Policy which originally went into effect on September 15, 2006. The enclosed information explains the procedures as well as how the Policy works as a whole. Because this policy applies to you, please take the time to read the attached material. The Dispute Resolution Policy will provide all employees a quick and efficient avenue to bring forward any employment related disputes that my arise between you and the Company. As soon as you have reviewed the policy, please sign the acknowledgment form and return it to your immediate manager. You should retain the Dispute Resolution Policy for your files.

(ECF No. 19-2 at 18.)

The DRP arbitration agreement itself states, in pertinent part:

> This Policy applies to any dispute arising out of or related to an Employee's employment with P.F. Chang's China Bistro . . . or termination of an Employee's employment. This Policy requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Policy. The Policy also applies, without limitation, to disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, or harassment and . . . all other statutory and common law claims. . . .
>
> A neutral arbitrator shall be selected by mutual agreement of the parties. The location of the arbitration proceeding shall be in the general geographical vicinity of the place where the Employee last worked for P.F. Chang's unless each party to the arbitration agrees in writing otherwise. If for any reason the parties cannot agree to an arbitrator within 30 days after a party initially submits the name of an arbitrator for consideration, one shall be selected through the procedures of the American Arbitration Association as set forth in their existing National Rules for the Resolution of Employment Disputes or through the procedures of any other mutually agreed upon neutral arbitration service. Except as provided herein, the arbitration shall be conducted in accordance with the existing National Rules for the Resolution of Employment Disputes of the American Arbitration Association; provided however, that the Arbitrator shall allow the discovery authorized by the Federal Rules of Civil Procedures or any other discovery required by applicable law in arbitration proceedings. However, there will be no right or authority for any dispute to be brought, heard or arbitrate as a class or collective action, as a private attorney general, or in a representative capacity on behalf of any persons. Also neither party to this agreement will have the right to participate in a class, representative or collective action, as a class representative, class member or an opt-in party, act as a private attorney general, or join or consolidate claims with claims of any other person or entity, against the other party hereto. . . .
>
> Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. However, in all cases where required by law, P.F. Chang's will pay the Arbitrator's and arbitration fees. If under applicable law P.F.

> Chang's is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned between the parties by the arbitrator in accordance with applicable law. . . .
>
> The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in a court of law for the claims presented to and decided by the Arbitrator. The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties. Should it become necessary to enforce the Arbitrator's decision and award, any party seeking review or enforcement through a court of competent jurisdiction shall take all legally available steps to preserve the above disclosure requirement.

(ECF No. 19-2 at 19-20.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts. *See* 9 U.S.C. § 1, et seq.; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-26 (1991). If a suit is proceeding in federal court, the party seeking arbitration may move the district court to compel the resisting party to submit to arbitration pursuant to their private agreement to arbitrate the dispute. 9 U.S.C. § 4. The FAA reflects both a "liberal federal policy favoring arbitration agreements" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citations omitted); *see also Kilgore v. Keybank, Nat'l Ass'n*, Nos. 09-16703, 10-15934, 2013 WL 1458876 at *4 (9th Cir. Apr. 11, 2013) (en banc) ("The FAA was intended to overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law." (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n. 14 (1985))); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("The [FAA] not only placed arbitration agreements on equal footing with other contracts, but established a federal policy in favor of arbitration, and a federal common law of arbitrability which preempts state law disfavoring arbitration.")

In determining whether to compel a party to arbitration, the Court may not review

the merits of the dispute; rather, the Court's role under the FAA is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks and citation omitted). If the Court finds that the answers to those questions are yes, the Court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

In determining the validity of an arbitration agreement, the Court applies state law contract principles. *Adams*, 279 F.3d at 892; *see also* 9 U.S.C. § 2. The FAA includes a savings clause that allows arbitration agreements to be invalidated only "upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). Thus, the FAA does not permit arbitration agreements to be declared unenforceable by contract defenses "that apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (citation omitted). As the Supreme Court's opinion in *Concepcion* makes clear, if a doctrine generally applicable to contract enforceability such as unconscionability, is applied by a state in a fashion that disfavors arbitration, then that rule interferes with arbitration and is preempted by the FAA. *Id.* at 1747-50 ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. . . . [A] court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot.") (internal quotation marks omitted). Thus, "[s]tates cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Concepcion*, 131 S. Ct. at 1753; *see also Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159 (9th Cir. 2012).

If the Court determines that a valid arbitration agreement encompasses the dispute, then the FAA requires the Court to enforce the arbitration agreement according to its terms. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th

Cir. 2004); *see also Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (noting that arbitration agreements must be rigorously enforced); *Volt Info. Scis., Inc., v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989) (noting that the purpose of the FAA "is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate"). "The [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds*, 470 U.S. at 218. The party opposing arbitration bears the burden of establishing the arbitration provision is invalid. *Franco v. Athens Disposal Co., Inc.*, 171 Cal. App. 4th 1277, 1287 (Cal. Ct. App. 2009). If arbitration is compelled, the court must stay litigation of arbitrable claims until such arbitration "has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3; *see also Kilgore*, 2013 WL 1458876, at *2.

## ANALYSIS

Defendant contends that all claims advanced by Plaintiffs are subject to arbitration pursuant to the DRP agreement. (ECF No. 11.) In opposition, Plaintiffs contend that the arbitration agreement is unenforceable and that Plaintiffs' claims are not covered by the scope of the arbitration agreement. (*See generally* ECF No. 18.)

### I.     Enforceability of the Arbitration Agreement

The Court must first determine if the DRP's arbitration provision is enforceable. Plaintiffs contend that arbitration is unenforceable because: 1) *Gentry v. Superior Court* prevents Plaintiffs' class action claims from being arbitrated; 2) Defendant's DRP is unconscionable; and 3) the DRP waives Plaintiffs' Private Attorney General Act ("PAGA") representative claims.[1] (*Id.*) The Court will address each of Plaintiffs' arguments in turn.

---

[1] Plaintiffs also argue that Defendant's DRP impermissibly restricts plaintiffs' First Amendment Rights. (ECF No. 18 at 14.) The Court acknowledges but summarily dismisses this argument because the First Amendment governs only state actors, not private actors such as Defendant. *See, e.g.*, *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 605 (9th Cir. 2004); *Parris v. Superior Court*, 109 Cal. App. 4th 285 (Cal. Ct. App. 2003).

## A. *Whether Gentry Precludes Enforcement*

Prior to the Supreme Court's ruling in *Concepcion*, the California Supreme Court in *Gentry v. Superior Court* held that class action waivers in employment arbitration agreements could not be enforced if a class action claim would be a significantly more effective way of vindicating plaintiffs' rights. 42 Cal. 4th 443 (2007). The *Gentry* court directed lower courts to utilize the following four factors to determine if a class action waiver in an employment arbitration agreement may be enforced: "the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' right to overtime pay through individual arbitration." *Id.* at 463; *see also Lewis v. UBS Fin. Servs.*, 818 F. Supp. 2d 1161, 1167 (N.D. Cal. 2011); *Valle v. Lowe's HIW, Inc.*, No. 11-1489 SC, 2011 WL 3667441, at *6 (N.D. Cal. Aug. 22, 2011).

Plaintiffs contend that all four *Gentry* factors are present in the instant action. Plaintiffs contend that: 1) recovery is limited to a modest maximum recovery of four-thousand dollars ($4,000.00) under California Labor Code section 226(e)(1); 2) there is an actual or perceived risk of retaliation to Defendant's current employees; 3) without retaining an attorney, class members will remain unaware of their legal rights; and 4) a real world obstacle to the vindication of class members' legal rights exists because the amount in controversy is too small to justify the cost of counsel or the time required to litigate the dispute. (ECF No. 18 at 16.) Thus, Plaintiffs contend that the DRP's waiver of class action claims is unenforceable under *Gentry*. (*Id.*)

However, as noted by Defendant, several courts have held that *Gentry* was overruled by *Concepcion* and no longer precludes enforcement of class action waivers in arbitration agreements.[2] In *Concepcion*, the Supreme Court held that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration

---

[2] *See, e.g.*, *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 840-41 (N.D. Cal. 2012); *Lewis*, 818 F. Supp. 2d at 1166-68; *Valle*, 2011 WL 3667441, at *6.

and thus creates a scheme inconsistent with the FAA." *Concepcion*, 131 S. Ct. at 1748. The Supreme Court concluded that "under the FAA, states could not condition the enforceability of arbitration agreements on the availability of classwide arbitration procedures." *Quevedo v. Macy's Inc.*, 798 F. Supp. 2d 1122, 1142 (C.D. Cal. 2011) (internal quotations marks and citations omitted). For the foregoing reasons, the Court also finds that *Gentry* no longer precludes enforcement of arbitration agreements in light of *Concepcion.*

In deciding *Gentry*, the California Supreme Court extended the *Discover Bank* rule which holds that a class action waiver provision in a consumer arbitration agreement is unenforceable under a specialized test for unconscionability. *See Lewis*, 818 F. Supp. 2d at 1166. However, the Supreme Court explicitly abrogated this rule, holding that the rule was preempted by the FAA. *Concepcion*, 131 S. Ct. at 1747; *Brown v. Ralph's Grocery Co.*, 197 Cal. App. 4th 489, 496 (Cal. Ct. App. 2011) ("[T]he [Supreme] [C]ourt held that the California Supreme Court's rule in *Discover Bank v. Superior Court* . . . that class action waivers in consumer arbitration agreements may be unenforceable or unconscionable–is preempted by the FAA."); *Lewis*, 818 F. Supp. 2d. at 1167 ("*Concepcion* abrogated *Discover Bank* . . . ."). The reasoning behind the *Discover Bank* rule, which the Supreme Court expressly abrogated, and *Gentry* is similar. *See Morvant*, 870 F. Supp. 2d at 841 ("The Court can find no principled basis to distinguish between *Discover Bank* . . . and *Gentry*. Each decision looked to the modest size of individuals' potential recovery, unequal knowledge and bargaining power in the contractual relationship, and other real world obstacles to the vindication of the individuals' rights.") (internal quotation marks omitted). Accordingly, the Court cannot recognize any distinction between *Discover Bank* and *Gentry* that would preserve *Gentry*'s applicability in light of *Concepcion*.

Moreover, the Supreme Court has made it clear that "when state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Concepcion*, 131 S. Ct. at 1747. *Gentry*, like *Discover Bank*, is a state-law contract defense that applies only to arbitration provisions.

*See Valle*, 2011 WL3667441, at *5; *see also Murphy v. DIRECTV, Inc.*, No. 2:07-cv-06454-JHN-VBKx, 2011 WL 3319574, at *4 (C.D. Cal. Aug. 2, 2011) ("[I]t is clear to the Court that *Concepcion* overrules *Gentry* . . . ."). Further, to the extent that *Gentry* is based on the policy of preserving "effective vindication of rights" for plaintiffs through class actions, "such unrelated policy concerns, however worthwhile, cannot undermine the FAA." *Coneff*, 673 F.3d at 1159.

Finally, the Supreme Court's recent decision in *American Express Co. v. Italian Colors Restaurant* provides further support that *Gentry* is preempted by the FAA. 133 S. Ct. 2304 (2013). In *American Express Co.*, the Supreme Court held that an arbitration agreement containing a class action wavier could not be found unenforceable on the ground that enforcement bars "effective vindication [of plaintiffs' rights]," because plaintiffs " have no economic incentive to pursue their . . . claims individually in arbitration." *Id.* at 2308, 2310. The Supreme Court reasoned that "the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low value claims," because "the latter interest . . . is 'unrelated' to the FAA." *Id.* at 9 (citing *Concepcion*, 131 S. Ct at 1753); *see also id.* at 2312-13 (Thomas, J., concurring) (holding that the economic infeasibility of bringing a claim is not a ground for the non-enforcement of an arbitration agreement that is recognized by the FAA).

For the foregoing reasons, the Court acknowledges the policy considerations underlying *Gentry*, but must hold that *Gentry* cannot preclude enforcement of the DRP in light of *Concepcion*.

### B.     *Unconscionability*

Plaintiffs contend that, because the DRP is unconscionable, the arbitration agreement itself is unconscionable and unenforceable. (ECF No. 18 at 4-10.) "Because unconscionability is a generally applicable defense to contracts, California courts may refuse to enforce an unconscionable arbitration agreement." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1171 (9th Cir. 2003); *see also Concepcion*, 173 S. Ct. at 1746. Unconscionability has both a procedural and a substantive component under California

law. Both components must be present before a court may refuse to enforce a contract on the basis of unconscionability. *Armendariz v. Found. Health Psychcare Servs. Inc.*, 24. Cal. 4th 83, 114 (2000). However, both components need not be present to the same degree, and courts employ a "sliding scale" approach to evaluate unconscionability. *Id.* at 114; *Gentry*, 42 Cal. 4th 443, 469 (2007); *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) ("[E]ven if the evidence of procedural unconscionability is slight, strong evidence of substantive unconscionability will tip the scale . . . ."). With this standard in mind, the Court next addresses Plaintiffs' unconscionability argument.

*I.        Procedural Unconscionability*

Plaintiffs contend that the DRP is procedurally unconscionable because it is "characterized by a high degree of oppression and surprise." (ECF No. 18 at 9-10.) Plaintiffs further contend that the DRP is a contract of adhesion. (*Id.*)

The procedural prong of the unconscionability analysis focuses on the circumstances surrounding the negotiation of the contract. *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (Cal. Ct. App. 2007). Specifically, procedural unconscionability arises from oppression or surprise. *Armendariz*, 24 Cal. 4th at 114. "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (Cal. Ct. App. 2008) (internal quotation marks omitted); *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002). "Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* Generally, a contract contains an element of oppression if it is a "contract of adhesion, one in which there was an inequality of bargaining power denying the weaker party the opportunity to negotiate the terms of the contract." *Morvant*, 870 F. Supp. 2d at 838 (citing *Armendariz*, 24 Cal. 4th at 114). "[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the

1 employee and necessary employment, and few employees are in a position to refuse a
2 job because of an arbitration requirement." *Id.* (quoting *Armendariz*, 24 Cal. 4th at
3 115).

4       Here the DRP unquestionably contains some characteristics of a contract of
5 adhesion: it is a standardized contract drafted by Defendant, the party with superior
6 bargaining power making an offer of employment. The DRP was tendered with the
7 understanding that the terms could not be negotiated and that Plaintiffs would not be
8 given employment without signing the DRP. (ECF No. 18-3 ¶ 4 ; ECF No. 18-4 ¶ 4.)
9 Accordingly, the DRP contains at least a small amount of oppression and thus some
10 procedural unconscionability. *See Morvant*, 870 F. Supp. 2d at 839 (holding that a
11 nearly identical arbitration agreement was an adhesive contract that "demonstrated at
12 least some amount of procedural unconscionability").

13       However, the Court finds that the DRP does not constitute an unfair surprise.
14 The DRP's cover page requested the Plaintiffs to "please take the time to read the
15 attached materials." (ECF. No 19-2 at 18.) Moreover, the effect of the DRP is clear to
16 a reader. The cover page states, "this policy applies to you," and clearly indicates that
17 the agreement binds employees to submit disputes to arbitration. The title of the DRP
18 itself clearly states "Dispute Resolution Policy" in bolded font. (*Id.* at 18-19); *see*
19 *Luchini v. Carmax, Inc.*, No. CV F 12-0417 LJO DLB, 2012 WL 2995483, at *9 (E.D.
20 Cal. July 23, 2012) (holding that an employment arbitration agreement was not
21 procedurally unconscionable where the agreement was designated "Dispute Resolution
22 Agreement"). Further, the substance of the DRP's terms are opaque. The DRP's terms
23 are contained in seven short paragraphs spanning less than two pages, and the word
24 "arbitration" appears in the very first sentence of these terms. (*Id.* at 19.) The waiver
25 of the right to bring a class action claim or PAGA claim is not located within a maze
26 of text, but is instead located in the last two sentences of the fourth paragraph. (*Id.* at
27 19-20.) Finally, both the DRP agreement and an attached Frequently Asked Questions
28 ("FAQ") section state that disputes covered by the DRP will not be heard in court.
(ECF No. 19-2 at 19, 25.) The FAQ specifically states "you give up the right to have

your dispute heard by a judge or jury in the court system," in a short two sentence paragraph under the heading "Do I give up any rights by agreeing to binding arbitration ?" in bold font. (ECF No. 19-2 at 25.)

In their opposition, Plaintiffs contend that they did not have a reasonable opportunity to understand the DRP because their primary language is Spanish and the terms are written in English. (ECF No. 18 at 10.) However, the Court finds that Plaintiffs were sufficiently fluent in English to have a reasonable opportunity to understand the DRP. Plaintiffs' supervisors have stated that Plaintiffs understand English. (ECF No. 19-4 at ¶ 3; ECF No. 19-5 at ¶ 4; ECF No. 19-1 at ¶ 5.) Plaintiffs completed numerous other employment documents written entirely in English. (ECF No. 19-3 at 12-18.) Moreover, Plaintiffs had an opportunity to review a Spanish-language version of the DRP, but neglected to do so. (ECF No. 18 at 10; ECF No. 19-3 at 10-16.) Accordingly, the Court finds that the terms of DRP did not constitute an unfair surprise to Plaintiffs, and finds the DRP slightly procedurally unconscionable because of its adhesive nature. *See Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal. App. 4th 1105, 1127 (Cal. Ct. App. 1999) ("[A] compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis.").

*ii.         Substantive Unconscionability*

Because the DRP is only slightly procedurally unconscionable, the Court must find significant substantive unconscionability to invalidate the DRP under the sliding scale approach employed by California courts. *See Armendariz,* 24 Cal. 4th at 114; *Nagrampa,* 469 F.3d at 1284*; see also West v. Henderson*, 227 Cal. App. 3d 1578, 1587-88 (Cal. Ct. App. 1991) (stating that a compelling showing of substantive unconscionability could potentially overcome a weaker showing of procedural unconscionability). Thus, in order to establish that the DRP is unenforceable on unconscionability grounds, Plaintiffs must demonstrate that the terms of the DRP are substantively unconscionable to a significant degree. *See id.* The Court finds that Plaintiffs have failed to do so.

The Court's inquiry into the substantive unconscionability of the arbitration provision focuses on discerning overly harsh or one-sided results. *Armendariz*, 24 Cal. 4th at 114. "Substantive unconscionability focuses on the terms of the agreement and whether those terms are so one-sided as to *shock the conscience*." *Ferguson*, 298 F.3d at 784 (internal quotations and citations omitted). An arbitration agreement is substantively unconscionable unless "the arbitration remedy contains a modicum of bilaterality." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) (citation omitted).

Here, the arbitration agreement contains more than a modicum of bilaterality. Under the DRP, all parties must submit all covered claims to arbitration, abide by a confidentiality agreement, participate in choosing the arbitrator, and operate under the same rules of arbitration and discovery. Moreover, Defendant is required to pay fees associated with mediation as well as the cost of arbitration where required by law, or a portion of the fees where not required by law. (ECF No. 19-2 at 20.)

Plaintiffs contend that the DRP is substantively unconscionable because it contains a confidentiality clause. (ECF No. 18 at 11.) The DRP states that, "[e]xcept as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder with the prior written consent of both parties." (ECF No. 19-2 at 20.) Plaintiffs contend that the DRP is substantively unconscionable because the DRP contains a confidentiality clause that "effectively limits talking about the case."[3] (ECF No. 18 at 11.)

The Court finds that the cases Plaintiffs rely upon are distinguishable and inapplicable. In *Davis*, *Pokorny*, and *Kanbar*, the respective courts analyzed a considerably broader confidentiality agreement than the one at issue here, that prevented "an employee from contacting other employees to assist in litigating or (arbitrating) an employee's case." *Davis*, 485 F.3d at 1079; *Kanbar*, 849 F. Supp.

---

[3]Plaintiffs rely on several cases in support of their contention. *See Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007); *Ting*, 319 F.3d 1126 (9th Cir. 2003); *Kanbar v. O'Melveny & Myers*, 849 F. Supp. 2d 902 (N.D. Cal. 2011); *Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d 1159 (S.D. Cal. 2011).

2d at 905-06; *Pokorny*, 601 F.3d 987 at 1001-02. Here, the DRP confidentiality clause is not nearly so broad as to prevent Plaintiffs from engaging in discovery. Further, the DRP expressly provides that "the Arbitrator shall allow the discovery authorized by the Federal Rules of Civil Procedure . . . ." ( ECF No. 19-2 at 20.)

Moreover, confidentiality agreements alone do not necessarily render an arbitration agreement substantively unconscionable. *See Davis*, 485 F.3d at 1079. In the cases cited by Plaintiffs, the courts did not solely rely on the confidentiality clause in finding the arbitration agreement unconscionable, but instead found multiple provisions of the arbitration agreement at issue to be substantively unconscionable. *See id.* at 1084 (finding the arbitration agreement had four substantively unconscionable provisions); *Kanbar*, 849 F. Supp. 2d at 911 (compelling arbitration but severing three unconscionable provisions); *Pokorny,* 601 F.3d at 1001 (finding that the arbitration agreement lacked mutuality in terms of claims to be arbitrated and time limitations for bringing claims); *Ting*, 319 F.3d at 1151 (holding that the arbitration agreement contained an unconscionable fee-splitting provision).

Finally, confidentiality clauses in employment arbitration agreements similar to the one at issue here have been enforced. In *Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.,* a nearly identical confidentiality clause that provided, "except as may be required by law, no party or arbitrator may disclose the existence, content or results of any arbitration hereunder without the prior written consent of both parties," was found to not be unconscionable because of its limited breadth. 194 Cal. App. 4th 704, 714 (Cal. Ct. App. 2011); *see also Morvant*, 870 F. Supp. 2d at 839 (finding a nearly identical arbitration agreement to the one at issue here to not be substantively unconscionable).

For the foregoing reasons, the Court finds that the DRP is not substantively unconscionable. Therefore, because Plaintiffs have failed to establish the required elements of unconscionability, the Court finds that the DRP is not unenforceable on unconscionability grounds.

*C.     Waiver of PAGA Claims*

Plaintiffs additionally argue that the DRP's prohibition of PAGA representative claims renders the arbitration agreement illegal and unenforceable. (ECF No. 18 at 15-17.) PAGA is a statutory cause of action that "authorizes an aggrieved employee . . . to recover civil penalties on behalf of himself and other current or former employees." *Franco*, 171 Cal. App. 4th at 1300 (internal quotation marks omitted); *see also* Cal. Lab. Code § 2698; *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009) ("An employee plaintiff suing . . . under the Labor Code Private Attorneys General Act of 2004, does so as the proxy or agent of the state's labor law enforcement agencies."). PAGA is designed to "remedy the understaffing of California's labor law enforcement agencies by granting employees the authority to bring civil actions against their employers for Labor Code Violations." *Id.* at 1301 (citation omitted); *Arias*, 46 Cal. 4th at 986; *Brown*, 197 Cal. App. 4th at 502. "PAGA serves the public interest by insuring that violating employers will not benefit from decreased labor law enforcement staffing levels." *Valle*, 2011 WL 3667441, at *5; Cal. Lab. Code §§ 2698(c),(d).

While the Court recognizes the public interest considerations served by PAGA claims, the Court does not find that the DRP is unenforceable because it requires employees to waive their PAGA claims. As discussed previously, the Supreme Court has held that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." 131 S. Ct. at 1748. Irrespective of the policy considerations of a state law, "a state cannot require a procedure that is inconsistent with the FAA, even if it is desirable . . . ." *Luchini*, 2012 WL 2995483, at *13 (quoting *Concepcion*, 131 S. Ct. at 1747). The Ninth Circuit echoed this sentiment when it interpreted *Concepcion* broadly, holding that the policy concerns of state legislative actions, "however worthwhile, cannot undermine the FAA." *Coneff*, 673 F.3d at 1159. Accordingly, to preclude enforcement of the DRP arbitration agreement on the basis of the PAGA representative waiver would allow a state law to "prohibit[] outright the arbitration of a particular type of claim," a result explicitly preempted by the FAA. *See Concepcion*, 131 S. Ct. at 1748. Many

other courts have similarly held that PAGA claims cannot preclude enforcement of employment arbitration agreements. *See Morvant*, 870 F. Supp. 2d at 845 ("[T]he Court must enforce the parties' Arbitration Agreement even if this might prevent Plaintiffs from acting as private attorneys general."); *Quevedo*, 798 F. Supp. 2d at 1142 (holding that employment arbitration agreements with provisions barring employees from bring representative PAGA claims are enforceable); *Luchini*, 2012 WL 2995483, at *13-14 (holding that PAGA is a state law claim that cannot be interpreted to outright prohibit arbitration because such a result would be in contravention of the FAA); *Grabowski*, 2011 WL 4353998, at *19 (holding that *Concepcion* prohibited non-enforcement of arbitration agreement that contained provision barring plaintiff from bring representative PAGA action); *Valle*, 2011 WL 3667441, at *6 (N.D. Cal. Aug. 22, 2011) ("Plaintiffs' PAGA claim is a state-law claim, and states may not exempt claims from the FAA." (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996))); *Nelson v. AT&T Mobility LLC*, No. C10-4802 THE, 2011 WL 3651153, at *4 (N.D. Cal. Aug. 18, 2011) ("*Concepcion* preempts California law holding that a PAGA claim is inarbitrable . . . .").

In opposition, Plaintiffs contend that the Court should find that representative PAGA claims cannot be waived in employment arbitration agreements, as the California Court of Appeals held in *Brown v. Ralphs Grocery Company.* 197 Cal. App. 4th 489 (Cal. Ct. App. 2011). In *Brown*, the court held that the FAA did not preempt state laws as to the unenforceability of PAGA representative action waivers in arbitration agreements. *Id.* at 502-03. That court noted that PAGA representative actions are "for the benefit of the of the general public" and that a "representative action has significant institutional advantages over a single claimant arbitration." *Id.* at 501-02 (internal quotation marks omitted). In doing so, that court reasoned that representative PAGA actions uniquely "punish and deter employer practices that violate the rights of . . . employees under the Labor Code" and "[i]f the FAA preempted state law as to the unenforceability of the PAGA representative action waivers, the benefits of private attorney general actions to enforce state labor laws would, in large part, be nullified."

*Id.* at 502. The *Brown* court distinguished PAGA claims from the holding in *Concepcion* by stating that the PAGA involves a public right, while *Concepcion* only dealt with the "private individual right of a consumer to pursue class action remedies." *Id.* at 500; *see also Urbino v. Orkin Servs.*, 882 F. Supp. 2d 1152, 1167 (C.D. Cal. 2011) (adopting the reasoning of *Brown* and holding that a PAGA arbitration waiver is unconscionable and thus unenforceable).

The Court declines to follow this line of reasoning. For the aforementioned reasons, *Concepcion* cannot be read so narrowly as to distinguish between a waiver of a private individual right to class action and a waiver of a public right to a PAGA claim. Accordingly, the Court concludes that the DRP's PAGA representative action waiver does not render the DRP agreement unenforceable.

## II. Scope of the Arbitration Provision

Having determined the enforceability of the DRP agreement, the Court must next look to determine "whether the agreement encompasses the dispute at issue." *Cox*, 533 F.3d at 1119. Despite the liberal policy favoring arbitration agreements, courts may only order arbitration for claims that parties have agreed to submit to arbitration. *See* 9 U.S.C. § 2; *Captain Bounce, Inc. v. Bus. Fin. Servs., Inc.*, No. 11-CV-858 JLS (WMC), 2012 WL 928412, at *4 (S.D. Cal. Mar. 19, 2012). In determining the scope of an arbitration provision, "[i]t is well established 'that where the contract contains an arbitration clause, there is a presumption of arbitrability.'" *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)). Accordingly, doubts as to whether an arbitration clause covers a dispute "should be resolved in favor of coverage." *Id.* at 1284; *see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139 (9th Cir. 1991). To determine whether a claim is covered by an arbitration provision, courts "apply ordinary state-law principles that govern the formation of contracts." *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Pursuant to California contract law, clear and explicit language governs a contract's interpretation, provided such an interpretation does not lead to an

"absurdity." Cal. Civ. Code § 1638. If possible, the language of the contract alone delineates the intention of the parties. *Id.* § 1639.

Defendant contends that Plaintiffs' claims must be subject to arbitration under the DRP because the DRP governs *any* and *all* disputes arising from employment with Defendant. (ECF No. 11-1 at 11.) As highlighted by Defendant, the DRP governs "any dispute arising out of or related to an Employee's employment," and expressly includes, but is not limited to, disputes regarding "compensation" and claims arising under "state statutes" and "all other state statutory and common law claims." (ECF No. 19-2 at 19.) The DRP further states that "neither party . . . will have the right to participate in a class, representative or collection action, as a class representative, class member . . . or act as a private attorney general . . . ." (*Id.* at 20.)

Here, all of Plaintiffs' claims arise from Defendant's alleged failure to provide proper wage statements. Accordingly, the Court finds that all of Plaintiffs' claims "aris[e] out of or [are] related to an Employee's employment." (*Id.* at 19); *see also Morvant*, 870 F. Supp. 2d at 831 (holding that plaintiffs' claims for failing to provide accurate wage statements, inter alia, were covered by an arbitration agreement that provided "any dispute arising out of or related to an Employee's employment"). Moreover, Plaintiffs' claims arise specifically in regard to "compensation"; a subject that is expressly covered by the DRP. (*Id.* at 19.)

Plaintiffs contend that, despite the plain language of the DRP, the Plaintiffs' PAGA claims are not within the scope of the DRP. (ECF No. 18 at 16.) Plaintiffs contend that Defendant intended to omit PAGA actions from the DRP's coverage of arbitrable claims because Defendant anticipated that, in the event of a dispute similar to the instant action, a California court would invalidate the entire arbitration clause. (ECF No. 18 at 16 (citing *Brown*, 197 Cal. App. 4th 489).) Thus, Plaintiffs contend that their PAGA claims are not within the scope of claims governed by the DRP. (*Id.*)

However, Plaintiffs' contention fails to account for the fact that Defendant expressly included language within the DRP excluding both parties' right to bring PAGA claims. (ECF No. 19-2 at 20.) Plaintiffs' contention further conflicts with the

express language of the DRP, which states that it governs "any dispute arising out of or related to an Employee's employment," including all claims arising under "state statutes" and all other "common law claims." (*Id.* at 19.) Plaintiffs' PAGA claims arise under state statute and arise from Plaintiffs' employment. *See* Cal. Lab. Code § 2698. et seq. Therefore, Plaintiffs' PAGA claims are within the scope of the DRP.

Pursuant to California contract law and in light of the policy favoring broad liberality in determining the scope of arbitration provisions, the Court cannot read the DRP to mean anything other than its plain meaning because the language is clear and explicit. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ."); *Rep. of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 478-79 (9th Cir. 1991) (holding that an arbitration clause containing the language "any and all disputes" must be interpreted liberally); *Robinson v. Issacs*, No. 11CV1021 JLS (RBB), 2011 WL 4862420, at *3 (S.D. Cal. Oct. 12, 2011) ("[T]he FAA requires [the court] to rigorously enforce agreements to arbitrate and resolve any doubts concerning the scope of arbitrable issues in favor of arbitration.") (internal quotation marks and citations omitted).

Accordingly, the Court finds that Plaintiffs' claims fall within the scope of claims covered by the DRP, and **GRANTS** Defendant's Motion to Compel Arbitration.

### III. Stay of the Judicial Proceedings

Pursuant to 9 U.S.C. § 3, the Court shall order a stay of judicial proceedings "pending compliance with a contractual arbitration clause." *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978). The FAA provides

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in the proceeding with such arbitration.

9 U.S.C. § 3. Accordingly, the Court **STAYS** these judicial proceedings pending the outcome of any arbitration.

## CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration and **STAYS** this judicial action pending the outcome of any arbitration.

**IT IS SO ORDERED.**

DATED: August 9, 2013

Honorable Janis L. Sammartino
United States District Judge